IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH 210-776-0583, THAT IS IN THE CUSTODY OR CONTROL OF T-MOBILE US, INC. | Case No. 5:22-MJ-5406-MAS<br><br>Filed Under Seal |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Chelsea Holliday being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with phone number 210-776-0583 (the "Subject Account"), with listed subscriber SHIMEA MCDONALD, that is in the custody or control of **T-Mobile US, Inc.**, a wireless communications provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054, USA. As a provider of wireless communications service, **T-Mobile** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **T-Mobile** to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2018. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations; I am trained and authorized to investigate the offenses alleged herein. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, and I am authorized by the Attorney General to request a search and seizure warrant. I have successfully investigated federal cases and provided witness testimony during a federal trial. Before becoming a Special Agent, I was employed by the Brevard County Sheriff's Office in Florida where I worked as a deputy sheriff, field training officer and investigative agent.

4. The items to be searched for and seized are described more particularly in Attachment B hereto and are incorporated by reference. As part of the investigation, I have reviewed documentation and reports provided by and discussed information with other agents, officers, and investigators involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge.

5. This Affidavit does not contain every fact known to the investigation, but only those deemed necessary to demonstrate sufficient probable cause to support the search of the above noted account (as described in Attachment A).

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1956, money laundering, 18 U.S.C. § 1343, wire fraud, 18 U.S.C. § 1344, bank fraud, 18 U.S.C. § 1349, conspiracy, and 18 U.S.C. § 1028A, aggravated identity theft, have been committed by SHIMEA MCDONALD and her co-conspirators. There is also probable cause

to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## JURISDICTION

7. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including the FBI, is conducting a criminal investigation of a conspiracy, including a conspirator identified as SHIMEA MARET MCDONALD, the members of which are suspected to have committed violations of 18 U.S.C. § 1956, money laundering, 18 U.S.C. § 1343, wire fraud, 18 U.S.C. § 1344, bank fraud, 18 U.S.C. § 1349, conspiracy, and 18 U.S.C. § 1028A, aggravated identity theft.

9. On August 10, 2022, an official who works for a government entity in Lexington, Kentucky (hereafter "Victim A"), received an email from someone whom he believed to be another government official. The email requested that he change the bank account information used for sending government funds to a nonprofit organization (hereafter "Victim B"). The official who received the email, believing it to be legitimate, forwarded the email to Victim A's finance department, which changed Victim B's banking information to a new account with Truist Bank, as requested.

10. After the bank account information was changed, subsequent wires were sent by Victim A to Victim B's purportedly new (fraudulent) account with Truist Bank, with an account number ending in 0109. From August 16 through August 24, 2022, a total of $3,905,837.05 was

wired by Victim A to Truist Bank account *0109. On August 25, 2022, Victim A realized they were the victims of a business email compromise (BEC) scam and reported it to their bank and law enforcement. Truist Bank was able to recover all of Victim A's funds that were sent to the Truist Bank account *0109 pursuant to the BEC scam.

11. Records obtained via legal process from Truist Bank showed the subject/recipient bank account *0109 was opened by K.N., with a listed address in Houston, Texas. A check of a database housing operator's licenses revealed that K.N. was a Hispanic female with a Florida driver's license and a home address in Fort Myers, Florida.

12. Truist Bank provided the FBI with video surveillance showing that a black female opened the account *0109 on June 6, 2022, under the name, Gretson Company LLC, using the identity of K.N. The account was opened at the Old Spanish Trail branch of Truist Bank, branch number 8721407, located at 6118B Scott St, Houston, TX 77021. A review of these Truist Bank records received through legal process shows that other in-person banking on account *0109 occurred on July 6, 2022, for the purchase of two official/counter checks, August 17, 2022, for the purchase of 8 official/counter checks, August 22, 2022, for a wire transfer, and August 25, 2022, for a wire transfer.

13. In October 2022, K.N. was interviewed by the FBI in Florida. She stated she did not have an account with Truist Bank and did not give anyone permission to use her identity to open an account with Truist Bank. K.N. stated she did not know McDonald and had not been to Houston in 2022.

14. A surveillance photo of the black female who opened the subject Truist Bank account under the name K.N, was obtained from Truist Bank. The photo depicts the black female directly after opening the fraudulent Truist Bank account under the name Gretson Company LLC

using the identity of K.N., and holding items in her hands, including what appears to be an identification card, is below:



*Note: The above photo is a portion of the original photo provided by Truist Bank. It is dated 06/06/2022.*

A closer image of the distinct shoulder tattoo is below:



*Note: The above photo was digitally brightened to show the shoulder tattoo more clearly.*

15. According to records obtained from JPMorgan Chase Bank through legal process, an account ending in 0336 in the name of Gretson Company LLC was also opened by a K.N. on June 3, 2022, at the Montrose Blvd branch in Houston, TX. According to statements for account

*0336, in-person banking appears to have occurred on June 6, 2022, for a cash deposit, and on the following dates in July 2022 for withdrawals: July 1, 2022, July 5, 2022, July 6, 2022, July 13, 2022, July 14, 2022, July 20, 2022, and July 21, 2022. The following image captured from surveillance video provided by JPMorgan Chase Bank in response to legal process shows a black female, who matches the individual who opened Truist bank account *0109, completing a withdrawal from account *0336 on July 21, 2022:



The same tattoo appears near the woman's left shoulder.

16. According to records obtained from Bank of America through legal process, an account ending in 8059, in the name of Gretson Company LLC was also opened by a K.N. on June 7, 2022. According to statements for account *8059, in-person banking appears to have occurred on June 22, 2022, July 1, 2022, July 5, 2022, July 6, 2022, August 15, 2022, and August 19, 2022. The following image captured from surveillance video provided by Bank of America in response to legal process shows a black female, who matches the individual who opened Truist Bank account *0109, completing a deposit to account *8059 on August 15, 2022:



The same tattoo appears near the woman's left shoulder.

17. The FBI has identified SHIMEA MARET MCDONALD (hereafter "McDonald") as the woman in the video surveillance and the individual who impersonated K.N. to open the previously-mentioned accounts, in the following manner: The fraudulent account change request email sent on August 12, 2022, to Victim A directed upcoming payments to Victim B be sent to Truist Bank account number *0109, which was opened fraudulently under the name Gretson Company LLC. According to records obtained from Truist Bank, online banking activity associated with account number *0109 originated from Internet Protocol (IP) address 73.136.144.119 on 25 occasions during the period June 24, 2022, through August 24, 2022. According to open-source records, the service provider for IP address 73.136.144.119 is Comcast Cable Communications. According to records obtained by the FBI from Comcast Cable Communications through legal process, the subscriber assigned IP address 73.136.144.119 during this period was:

    Name:        Shimea McDonald

    Address:     1414 Wood Hollow Dr, Apt 522 Houston, TX 77057

    Telephone #:  (210) 776-0583

    Account:  Ending in 0052

  18.  This identification of McDonald was confirmed by a comparison of photographs of McDonald and the bank surveillance photographs of McDonald. Open-source research on McDonald revealed she owns a business in Houston, Texas. McDonald's business website, browedbybella.com, has a photo of her, with a distinct tattoo on her left shoulder, and a biography section which states, "I'm Shimea McDonald." The contact section of the site lists the SUBJECT ACCOUNT phone number, 210-776-0583.

  19.  According to records obtained from Truist Bank, online banking activity associated with account number *0109 originated from Internet Protocol (IP) addresses supported by T-Mobile 28 times during the period June 25, 2022, through August 23, 2022, meaning the individual accessing the Truist Bank account *0109 online did so from a device connected to the T-Mobile network.[1]

  20.  The FBI analyzed financial records related to McDonald and identified multiple instances of suspected fraud activity. The suspected fraud activity of McDonald is summarized below:

a. January 2021 – Chase Bank

  i. The FBI reviewed records from Chase Bank which showed on January 28, 2021, McDonald intended on depositing an amount of cash over $10,000, however, she

---

[1] McDONALD has other T-Mobile phone numbers associated to her name. According to records provided by Truist Bank in response to legal process, the contact email address for account *0109 is gretsoncollc@gmail.com. According to records provided by Google LLC in response to legal process, account gretsoncollc@gmail.com was accessed from IP address 2607:fb91:2cae:2b0f:980d:7ef2:ef12:f736 on 2022-06-03 at 18:43:03 (UTC). According to open source records, IP address 2607:fb91:2cae:2b0f:980d:7ef2:ef12:f736 is supported by T-Mobile. According to records provided by T-Mobile on November 3, 2022 in response to legal process, IP address 2607:fb91:2cae:2b0f:980d:7ef2:ef12:f736 was allocated to account (726) 582-4082 for the period 06-03-2022 at 18:12:35 (UTC) to 06-03-2022 19:53:05 (UTC). Effective May 4, 2022 through the date of record, the subscriber of T-Mobile account (726) 582-4082 is SHIMEA M. MCDONALD, 16505 LOOKOUT RD APT 633, SCHERTZ, TX 78154 USA. However, given the frequency of her use of the SUBJECT ACCOUNT, it is believed that the device associated with the SUBJECT ACCOUNT is likely the device carried during her frequent, in person trips to financial institutions to conduct transactions under the name of K.N.

only deposited $5,000 cash after being told by a bank teller that anything over $10,000 would have to be reported. It appeared McDonald was purposefully structuring her deposits in order to circumvent the deposit threshold reporting requirements.

b. June 2021 – Chase Bank

  i. The FBI reviewed records from Chase Bank which showed from June 10 through July 27, 2021, McDonald made 12 cash deposits, totaling $48,680, at five different Chase Bank locations in Houston, TX and Las Vegas, NV. The records showed all of the deposits were under the reporting threshold, except for one deposit in the amount of $13,800, and it appeared McDonald was purposefully structuring her deposits in order to circumvent the deposit threshold reporting requirements.

c. June 2021 – Senor Cashing

  i. The FBI reviewed records from Senor Cashing, a check-cashing and money services business, which showed that in June 2021, McDonald went to two locations of Senor Cashing in Houston, TX, to conduct three money transfers, totaling $12,901. Records showed it appeared McDonald was purposefully structuring her money transfer amounts in order to circumvent the deposit threshold reporting requirements.

d. August 2021 – Chase Bank

  i. The FBI reviewed records from Chase Bank which showed from August 14 through August 21, 2021, McDonald made seven cash deposits, totaling $17,580, at four different Chase Bank locations in Houston, TX. The records showed all of the deposits were under the reporting threshold and it appeared McDonald was

    purposefully structuring her deposits in order to circumvent the deposit threshold reporting requirements.

 e. December 2021 – Chase Bank

   i. The FBI reviewed records from Chase Bank which showed on December 28, 2021, McDonald make multiple cash deposits, within minutes of each other, at a Chase Bank branch in Houston, Texas, totaling $9,940. Two days after these deposits, McDonald made a withdrawal of $8,400 from a different branch of Chase Bank in Houston, TX. These records showed McDonald rapidly withdrew all but approximately 15% of the funds she deposited on December 28, 2021.

 f. January 2022 – PNC Bank

   i. The FBI reviewed records from PNC Bank which showed from January 18, 2022, through June 10, 2022, McDonald made seven cash deposits totaling $42,740.00.25. During this timeframe, records showed McDonald made 25 ATM cash deposits totaling $59,960.43. The records also showed McDonald had significant money transfers totaling $32,633. One wire debit transfer occurred on June 6, 2022, for $11,680. Due to the excessive amount of cash deposits that were under the reporting threshold, it appeared McDonald was purposefully structuring her deposits in order to circumvent the deposit threshold reporting requirements.

 21. According to records provided by T-Mobile to the FBI on October 18, 2022, in response to legal process, the subscriber of 210-776-0583 (SUBJECT ACCOUNT) for the period August 19, 2019, through the date of the record response, was:

   Shimea M. McDonald, 16505 Lookout Rd., Apt 633, Schertz, TX 78154

22.	According to records obtained from the Texas Secretary of State through legal process, Gretson Company LLC was formed on May 24, 2022, with a K.N. listed as the managing member.

23.	The information to be disclosed by the provider for the time periods identified in Attachment B is likely to constitute evidence of the crimes under investigation, in the following ways: First, the records will likely show where the target phone was located on June 6, 2022, when the fraudulent Truist Bank account was opened, and on various dates in August 2022 when the fraudulent wires were sent and Victim A and Victim B were defrauded via the BEC scam. Furthermore, this information will likely show which financial institutions McDonald frequents, which will further the captioned investigation. Lastly, this information will potentially identify other locations McDonald frequents to provide insight into the locations of McDonald's co-conspirators.

24.	In my training and experience working complex financial crimes, individuals who participate in illicit money-laundering schemes such as this one, commonly communicate using cellular devices before, during, and after their illicit activities. My experience investigating this type of crime has shown that this constant communication is crucial to the success of money laundering schemes; communication via cellular devices ensures the money mule knows the source of the fraudulent funds, the timing of funds being received, and the amount of funds being received into a particular financial account. Without this information, via some kind of communication (typically cellular device communication), money mules would be unable to complete their assigned tasks. Furthermore, in my experience, money mules and their co-conspirators commonly communicate via text, phone calls, and encrypted applications such as

WhatsApp and Viber, to make it harder for law enforcement to identify them. These means of communication are typically accessed on cellular devices.

25.     In my training and experience, I have learned that **T-Mobile US** is a company that provides cellular communications service to the general public. I also know that providers of cellular communications services have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

26.     Based on my training and experience, I know that **T-Mobile US** can collect cell-site data on a prospective and historical basis about the target cell phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as **T-Mobile US** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

27. Based on my training and experience I know that **T-Mobile US** has additional reports that further identify the location of cellular telephones. Specifically, **T-Mobile US** maintains location records referred to as Timing Advance (True Call) records.

28. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

29. Based on my training and experience, I know that wireless providers such as **T-Mobile US** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication services. I also know that wireless providers such as **T-Mobile US** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. I know that subscriber information and billing records maintained by telephone providers provide material evidence of criminal offenses. In my training and experience, this information may constitute

evidence of the crimes under investigation because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or victims.

30. Based on my training and experience, I know that historical cell phone records can be used to determine the approximate location of cellular telephones. In addition, I know that persons involved in illegal activity as part of a conspiracy often communicate with each other in furtherance of their illegal activity. Records of that communication are maintained in historical cell phone records.

31. Based on the information detailed above, I submit that there is probable cause to believe that the information stored by **T-Mobile US** for the SUBJECT ACCOUNT contains evidence of the criminal violations identified above in that it should corroborate the occurrences of McDonald visiting the referenced financial institutions.

## AUTHORIZATION REQUEST

32. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

33. I further request that the Court direct **T-Mobile US** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **T-Mobile US,** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34. Because the warrant for the account described in Attachment A will be served on **T-Mobile US**, who will then compile the requested records at times convenient to that entity,

reasonable cause exists to permit the execution of the requested warrant at any time of the day or night.

Respectfully submitted,

/s/ Chelsea Holliday
Chelsea Holliday
Special Agent
Federal Bureau of Investigation

Transmitted by email and attested to by telephone in accordance with Fed. R. Crim. P. 4.1 on this  7th  day of November, 2022

HON. MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE